UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Darrin M. Mottram**

    v.

                                  Case No. 15-cv-470-PB
                                  Opinion No. 2016 DNH 046

**Wells Fargo Bank, N.A.**

## MEMORANDUM AND ORDER

Darrin M. Mottram, proceeding pro se, has sued Wells Fargo Bank, N.A., for claims arising from the bank's attempts to foreclose on his home.  Mottram alleges that Wells Fargo (1) discriminated against him because he is disabled, (2) violated the Real Estate Settlement Procedures Act ("RESPA") by failing to disclose certain information about his loan, and (3) breached the covenant of good faith and fair dealing by declining to modify his loan.  He asserts that Wells Fargo's actions have caused him emotional distress.  Wells Fargo responded with a motion to dismiss, arguing that Mottram's complaint fails to state a viable claim for relief.

## I.  BACKGROUND

Mottram, who suffers from an unspecified disability, lives at 42 South Avenue in Derry, New Hampshire.[1]  In January 2009,

---

[1] The parties have provided little information about the facts surrounding their dispute.  To put this lawsuit into context, I piece together the relevant facts from the complaint and the

Mottram entered into a mortgage, secured by his home, with Plaza Home Mortgage, Inc.  In 2012, Mottram's mortgage was assigned to Wells Fargo, the defendant here.

At some point, Mottram defaulted on his mortgage, and Wells Fargo attempted to foreclose.  Wells Fargo hired the Harmon Law Offices as foreclosure counsel, which sent Mottram notices that his house would be auctioned.  Those notices, and the possibility that he would be required to leave his home, upset Mottram.  He filed this suit.

## II.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it provides "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," id., but "simply calls for enough fact to raise a reasonable expectation that discovery

---

briefs.  I construe the well-pleaded facts in the light most favorable to Mottram.  See Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009).

will reveal evidence" of wrongdoing.  Twombly, 550 U.S. at 556.

I employ a two-step approach in deciding a Rule 12(b)(6) motion.  See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action."  Id. (citations, internal punctuation, and alterations omitted).  I then accept as true all non-conclusory factual allegations and the reasonable inferences drawn therefrom, and determine whether the claim is plausible.  Id.  When applying this standard to a pro se pleading, I construe the pleading liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008) (explaining that courts "hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects").

### III.  <u>ANALYSIS</u>

Mottram's complaint appears to include four claims: (1) a discrimination claim, (2) a RESPA claim, (3) a breach of the implied covenant of good faith and fair dealing claim, and (4) a claim for infliction of emotional distress.  Wells Fargo attacks each claim on various grounds.

**A.   Discrimination Claim**

Mottram first alleges that Wells Fargo discriminated against him on the basis of his disability by declining to modify his loan, attempting to foreclose on his home, and sending him auction notices.  Mottram claims that these actions violate federal and state anti-discrimination laws.  He specifically cites Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act.  See Doc. No. 1 at 1.

1.   Title VII

Mottram contends that Wells Fargo violated Title VII by discriminating against him because of his disability.  Title VII forbids "an employer . . . [from] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Accordingly, "Title VII is a vehicle through which an individual may seek recovery for employment discrimination . . . ."  Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008) (emphasis added).  Title VII thus prohibits only employment-related discrimination.  See Joseph G. Cook & John L. Sobieski, Jr., Civil Rights Actions, § 21.08[A], at 21-54 (2015) ("Title VII prohibits discrimination only insofar as it relates to employment.");  DeLia v. Verizon Commc'ns Inc., 656

4

F.3d 1, 6 (1st Cir. 2011) (noting that the absence of an
employment relationship is "fatal" to a Title VII claim).

In this case, Mottram concedes that he did not have an
employment relationship with the Wells Fargo.  Doc. No. 5 at 2
("[P]laintiff is not the employee of the Defendant . . . .").
He instead bases his Title VII claim solely on his status as a
Wells Fargo borrower.  See id.  Because Mottram has not alleged
an essential element of a Title VII claim – i.e. the existence
of an employment relationship - his claim fails as a matter of
law.[2]

2.  Americans with Disabilities Act

Mottram also cites the Americans with Disabilities Act
("ADA").  Title III of the ADA provides that "[n]o individual
shall be discriminated against on the basis of disability in the
full and equal enjoyment of the goods, services, facilities,
privileges, advantages, or accommodations of any place of public
accommodation . . . ."  42 U.S.C. § 12182(a).  To state a Title

---

[2] The Title VII claim fails for two additional reasons.  First,
by its express terms, Title VII forbids discrimination on the
basis of race, color, religion, sex, or national origin; it
"does not prohibit discrimination on the basis of disability."
Lane v. Potter, 699 F. Supp. 2d 358, 362 (D. Mass. 2010); see
Orell v. UMass Mem'l Med. Ctr., Inc., 203 F. Supp. 2d 52, 59 (D.
Mass. 2002).  And second, "judicial recourse under Title VII is
not a remedy of first resort."  Franceschi, 514 F.3d at 85
(internal punctuation omitted).  "Before [a plaintiff] may sue
in federal court on a Title VII claim, he must first exhaust
administrative remedies."  Id.  Mottram has not alleged that he
exhausted those remedies before bringing suit here.

III claim, a plaintiff must allege that (1) he is disabled within the meaning of the ADA, (2) the defendant is a private entity that owns or operates a public accommodation, (3) the defendant has a discriminatory policy or practice in effect, and (4) that the plaintiff was denied an accommodation that would have afforded him access to the desired service. Nickerson-Reti v. Bank of America, N.A., No. 13-12316-FDS, 2014 WL 2945198, at *11 (D. Mass. June 26, 2014) (citing Dudley v. Hannaford Bros. Co., 333 F.3d 299, 307 (1st Cir. 2003)).

Mottram may be able to state a Title III claim if he can show that Wells Fargo's actions were attributable to disability-based discrimination, or if he can demonstrate unequal treatment between disabled and non-disabled people. See Jordan v. Chase Manhattan Bank, 91 F. Supp. 3d 491, 507 (S.D.N.Y. 2015) (explaining that the bank was required to make "reasonable accommodation" when necessary to provide the same services to individual with disabilities, but concluding that the "law did not require defendants to postpone or forego the foreclosure . . . simply because [plaintiff] was disabled"). Yet, Mottram's complaint does not include adequate facts to substantiate such a claim. For instance, although Mottram states that he is "disabled," he does not specify his disability; he does not allege that he requested, and was denied, an accommodation for his disability; and, despite asserting that Wells Fargo

6

discriminated against him "because" he is disabled, Doc. No. 1 at 2, he does not offer any information to support this claim.

I therefore conclude that, even under the liberal pleadings requirements for pro se plaintiffs, Mottram has not alleged sufficient facts to survive the bank's motion to dismiss his ADA claim. Nevertheless, because Mottram is representing himself, and may not have understood what he needed to include in his complaint, I grant him leave to amend his complaint to assert additional facts to support his claim. To do so, Mottram must identify his disability and allege sufficient facts to support a plausible claim under the ADA. In particular, he must explain what Wells Fargo did or failed to do that allegedly violated his rights under the ADA.

### 3.   Fair Housing Act

Construing his complaint liberally, Mottram may also be bringing a claim under the Fair Housing Act ("FHA"). The FHA provides that "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction . . . because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). The Act defines "residential real-estate related transaction" to include the "making or purchasing of loans or providing other financial assistance" for

purchasing or maintaining a dwelling, or where the loan or other financial assistance is secured by residential real estate.  Id. § 3605(b).

At this time, however, Mottram has not alleged sufficient facts to support a claim under the FHA.  In the interest of ensuring that Mottram does not lose a claim due to his failure to name the proper statute, I grant Mottram leave to amend his complaint to assert facts sufficient to support an FHA claim.

**B.**   **RESPA Claim**

In Count II, Mottram claims that Wells Fargo violated RESPA by "failing to disclose the information in regard of the cost of the loan and fees that [Wells Fargo] as [sic] added to the cost of the loan."  Doc. No. 1 at 3.  Mottram provides no additional information to support his RESPA claim.  He does not identify the information that Wells Fargo allegedly failed to disclose, or specify when the bank failed to disclose it.

Again, even under the liberal pleadings standard applied to pro se pleadings, Mottram's complaint does not provide enough facts to make out a viable RESPA claim at this time. Accordingly, I grant Mottram leave to amend his complaint. Should he choose to amend, Mottram must explain, in greater

detail than he has to date, what Wells Fargo did or failed to do that allegedly violated his rights under RESPA.[3]

## C.   <u>Breach of Implied Covenant of Good Faith and Fair Dealing Claim</u>

Mottram next alleges that Wells Fargo breached the implied covenant of good faith and fair dealing by declining to modify Mottram's loan.  Doc. No. 1 at 3.  Under New Hampshire law, there is an implied covenant in every agreement "that the parties will act in good faith and fairly with one another." Livingston v. 18 Mile Point Drive, Ltd., 158 N.H. 619, 624 (2009).  This duty applies, however, only where the agreement vests a contracting party with a degree of discretion in performing its duties under the agreement, and the party exercises that discretion in a way that harms the other party.[4] Ruivo v. Wells Fargo Bank, N.A., 2012 DNH 191, 8; see Centronics Corp. v. Genicom Corp., 132 N.H. 133, 143 (1989).

---

[3] Wells Fargo argues that Mottram's RESPA claim is time barred. As the bank notes, 12 U.S.C.A. § 2614 requires a plaintiff to bring his RESPA claim within either one or three years "from the date of the occurrence of the violation," depending on the nature of the alleged violation.  Because I dismiss Mottram's claim on other grounds, and because it is currently unclear what "violation" Mottram is alleging, I do not reach this issue.

[4] A party may also invoke the duty of good faith and fair dealing with respect to issues concerning contract formation and the termination of at will employment.  Birch Broadcasting, Inc. v. Capitol Broadcasting Corp., Inc., 161 N.H. 192, 198 (2010). Neither of these aspects of the duty is relevant here.

Mottram's claim fails here because he has not alleged that the loan agreement gave Wells Fargo discretion in performing its obligations under the agreement, or pointed to any provision in the agreement that might support such an argument.  He also has not claimed that Wells Fargo exercised such discretion in a way that denied Mottram an essential benefit of the bargain.  He instead appears to argue that Wells Fargo is liable simply because it rejected his loan modification request.  See Doc. No. 1 at 3.  This argument is unpersuasive.

Courts in this district have regularly found "that the covenant of good faith and fair dealing in a loan agreement cannot be used to require the lender to modify or restructure the loan." Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 130 (D.N.H. 2012); see Mudge v. Bank of America, N.A., 2013 DNH 159, 8-9; Douglas v. U.S. Bank Nat. Ass'n, 2013 DNH 071, 12-13 ("That the [plaintiffs] later found themselves unable to repay their loan, and may have benefitted from a loan modification, does nothing to undermine the fact that, in the first instance, they received the loan they bargained for, which was the full value of their agreement."); Ruivo, 2012 DNH 191, 10.  This conclusion is "consistent with New Hampshire law that the [implied] covenant cannot be used to rewrite a contract to avoid harsh results." Moore, 848 F. Supp. 2d at 130.  Accordingly, even if Mottram had alleged that the

loan agreement gave Wells Fargo discretion to permit a loan
modification, and that the bank exercised that discretion
unreasonably, his claim likely would still be dismissed.

**D.   Emotional Distress Claims**

Finally, although not pled as a separate claim, Mottram
alleges that Wells Fargo's actions have caused him emotional
distress.  Mottram does not state whether he is bringing a claim
for "negligent" or "intentional" infliction of emotional
distress.  In light of his pro se status, I address both causes
of actions.

1.   Negligent Infliction of Emotional Distress

To make out a negligent infliction of emotional distress
claim, the plaintiff must show: "(1) causal negligence of the
defendant; (2) foreseeability; and (3) serious mental and
emotional harm accompanied by objective physical symptoms."
Tessier v. Rockefeller, 162 N.H. 324, 342 (2011) (internal
quotation marks omitted).  Thus, to state a viable negligent
infliction claim, the plaintiff must allege "physical
manifestations of the distress."  Hudson v. Dr. Michael J.
O'Connell's Pain Care Ctr., Inc., 822 F. Supp. 2d 84, 98 (D.N.H.
2011).

Here, Mottram does not assert in his complaint (or argue in
his objection to Wells Fargo's motion) that he experienced any
physical symptoms due to Wells Fargo's alleged negligent

infliction of emotional distress.  Therefore, to the extent that
Mottram is bringing a negligent inflicion claim, his claim
fails.  If Mottram did suffer such symptoms as a result of Wells
Fargo's actions, and can provide details about those symptoms,
he is free to amend his complaint.  See id. (dismissing
negligent inflicion claim where plaintiff provided no details
regarding symptoms).

    2.   Intentional Inflicion of Emotional Distress

    A defendant is liable for intentional inflicion of
emotional distress if it "by extreme and outrageous conduct,
intentionally or recklessly cause[d] severe emotional distress
to another." Tessier, 162 N.H. at 341 (alteration in original).
To satisfy the "extreme and outrageous" requirement, the
defendant's actions must be "so outrageous in character, and so
extreme in degree, as to go beyond all possible bounds of
decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community." Id. (quoting Mikell v.
Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009)).  "The
ordinary activities of a bank foreclosing on a mortgage do not
generally meet the extreme and outrageous standard." Bradley v.
Wells Fargo Bank, N.A., 2014 DNH 041, 12; see Beaudette v. Bank
of America, Inc., 2012 DNH 015, 4.

    In this case, Mottram claims that Wells Fargo intentionally
inflicted emotional distress by denying his request for a loan

modification, and by sending him "repeated" auction notices.
See Doc. No. 5 at 3.  These actions were "outrageous," Mottram
argues, because he is disabled, and because it would be
outrageous to "force" a disabled person to leave his home.  Id.

    Although I appreciate the difficult situation that Mr.
Mottram faces, the fact that he is disabled, by itself, does not
render the activities described in his complaint - denying a
loan modification request and sending auction notices - "extreme
and outrageous."  Instead, these appear to be precisely the
kinds of ordinary foreclosure-related activities that, in most
cases, cannot give rise to a viable intentional infliction of
emotional distress claim.  See Bradley, 2014 DNH 041, 12.  In
the absence of additional facts, then, Mottram's claim fails as
a matter of law.


### IV.  CONCLUSION

    For the reasons set forth above, defendant's motion to
dismiss (Doc. No. 3) is granted.  I grant plaintiff leave to
amend his complaint within thirty days.

    SO ORDERED.

                              /s/ Paul Barbadoro
                              Paul Barbadoro
                              United States District Judge
March 8, 2016
cc:  Darrin M. Mottram, pro se
     Joseph Patrick Kennedy, Esq.

13